## The Germania Fire Insurance Company *v.* Pitcher.

[No. 19,863.    Filed October 14, 1902.    Rehearing denied April 8, 1903.]

INSURANCE.—*Proof of Loss.—Waiver.*—An adjuster who has been sent by an insurance company for the express purpose of adjusting a loss, has authority to waive a provision of the policy concerning proofs of loss.  *p. 395.*

SAME.—*Proof of Loss.—Waiver.—Pleading.—Verdict.*—A complaint in an action on an insurance policy disclosed that proofs of loss were not made within sixty days as required by the policy, but alleged that when the fire occurred plaintiff gave notice thereof to defendant's agents who had issued the policy and defendant sent its adjuster to adjust the loss; that he entered into negotiations with plaintiff's agent concerning the loss, and continued the negotiations until after the time within which by the terms of the policy the assured was required to furnish formal proofs of loss; that they were unable to agree as to the amount of the loss and defendant refused and still refuses to pay the same, but did not base its refusal on the failure of plaintiff to furnish proofs of loss. *Held,* that if the complaint does allege facts from which a waiver can be declared as a matter of law, the plaintiff was entitled thereunder to take the verdict of the jury upon the mixed question of law and fact as to whether there was a waiver of proofs of loss.  *pp. 394, 395,*

Germania Fire Ins. Co. *v.* Pitcher.

INSURANCE.—*Proof of Loss.*—*Waiver.*—The refusal of an insurance company to pay a loss because the claim is excessive may be a waiver of the furnishing of proofs of loss as much as where the refusal is put on any other grounds.  *pp. 400-403.*

SAME.—*Proof of Loss.*—*Waiver.*—*Evidence.*—An insurance company acting on an oral notice sent its adjuster to adjust a loss. He entered into negotiations of settlement with the agent of insured and there was but little difference between them over the items discussed.  A few days later the company sent proofs of loss to its local agent but the agent of insured refused to execute the papers because he had not had a wall examined which was injured by the fire and which the board of works had ordered torn down.  The adjuster thereafter returned and went before the board of works with a son of insured and attempted to have the enforcement of the order delayed, and refused to pay for damage to the wall, but said nothing about the omission to furnish proofs of loss.  *Held,* that the evidence was sufficient to show a waiver of proofs of loss.  *pp. 403, 404.*

SAME.—*Ownership of Property.*—A judgment for plaintiff in an action on an insurance policy will not be reversed because of the failure of the court to instruct the jury that it was necessary for plaintiff to prove that she was the owner of the property at the time of the fire, where the evidence showed without dispute that plaintiff was the owner at such time.  *p. 405.*

APPEAL AND ERROR.— *Harmless Error.* — *Instructions.*— *Insurance.* — Under §670 Burns 1901, that a judgment shall not be reversed, "where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below," the Supreme Court will not reverse a judgment against an insurance company because of an instruction without the issues on the question of waiver of proofs of loss, where under the evidence no other conclusion could have been reached on the question of waiver than that reached by the jury.  *pp. 405, 406.*

From the Superior Court of Vanderburgh County; *J. H. Foster,* Judge.

Action by Caroline C. Pitcher against the Germania Fire Insurance Company.  From a judgment for plaintiff, defendant appeals.  Transferred from Appellate Court, under §1337u Burns 1901.  *Affirmed.*

S. N. *Chambers,* S. O. *Pickens,* C. W. *Moores,* A. *Gilchrist* and C. A. *De Bruler,* for appellant.
G. A. *Cunningham,* for appellee.

GILLETT, J.—This action is based on a fire insurance policy executed by appellant to appellee. There was a judgment below in favor of appellee. Appellant assigns as error the overruling of its separate demurrer to the second and third paragraphs of complaint, and the overruling of its motion for a new trial.

The second and third paragraphs of complaint disclose the fact that proofs of loss were not made within sixty days after the fire, as required by the policy, but, in lieu thereof, the appellee seeks in said paragraphs to charge a waiver of such requirement. Appellant's counsel contend that said pleadings are in this respect insufficient. In the second paragraph of complaint it is alleged that when the fire occurred the appellee gave oral notice thereof to appellant's local agents who had issued said policy; that said agents gave notice to appellant; that the latter sent its adjuster to adjust the loss on appellee's said building; that said adjuster and an agent of appellee examined said building with a view to the adjustment of said loss; that said adjuster and the appellee's said agent entered into negotiations concerning said loss, and continued said negotiations from time to time until after the time within which, by the terms of said policy, the appellee was required to furnish formal proofs of loss; that appellee and appellant were unable to agree as to the amount of said loss; that the same has never been adjusted or settled; that the appellant refused and still refuses to pay the same, but that the appellant did not base its said refusal on the failure of appellee to furnish proofs of loss, but on other grounds altogether. By way of showing the theory of the pleader, there is added to the averments upon this subject the averment or statement, "that by its said conduct the defendant waived notice in writing from the plaintiff and the formal proofs of loss required by the terms of said policy." The third paragraph of complaint contains the same allegations in substance, except that it does not allege that the negotiations continued until after

the time for furnishing formal proofs of loss expired, and it states explicitly that appellant made no objection to appellee's claim because of her failure to furnish proofs of loss.

An adjuster who had been sent for the express purpose of adjusting a loss has authority to waive a provision of the policy concerning proofs of loss. *Aetna Ins. Co.* v. *Shryer,* 85 Ind. 362; *Indiana Ins. Co.* v. *Capehart,* 108 Ind. 270; *McCollum* v. *Liverpool, etc., Ins. Co.,* 67 Mo. App. 66, and cases there cited.

It must be confessed that the second paragraph of complaint is wanting in the allegation of facts sufficient to constitute a technical estoppel, although the paragraph goes some length in that direction. We think, however, that it can be affirmed from the facts alleged that if there has not been a waiver that can be declared as a matter of law, the appellee was at least entitled to take the verdict of a jury upon the mixed question of law and fact as to whether there was a waiver.

In *Insurance Co.* v. *Norton,* 96 U. S. 234, 24 L. Ed. 689, where the fact was that an agreement has been made by an insurance company to extend the time of payment of a premium note, it was said by the Supreme Court of the United States: "Forfeitures are not favored in the law. They are often the means of great oppression and injustice. And, where adequate compensation can be made, the law in many cases, and equity in all cases, discharges the forfeiture, upon such compensation being made. It is true, we held in *Statham's Case,* 93 U. S. 24, that, in life insurance, time of payment is material, and can not be extended by the courts against the assent of the company. But where such assent is given, the courts should be liberal in construing the transaction in favor of avoiding a forfeiture. The case of leases is not without analogy to the present. It is familiar law, that, when a lease has become forfeited, any act of the landlord indicating a recognition of its continu-

ance, such as distraining for rent, or accepting rent which accrued after the forfeiture, is deemed a waiver of the condition. * * * In *Ward* v. *Day,* 4 Best & Sm. 335, after a forfeiture of a license to gather minerals off of a manor had been incurred, the landlord entered into negotiations with the licensee and his son, to grant to the latter a renewal of the license when it should expire; and terms were agreed on, which the landlord afterwards refused to carry out. It was held that by entering into those negotiations, he waived the forfeiture of the original license. The negotiations assumed that the original license was to continue to its termination. The exaction of the forfeiture was in the landlord's election; and he evinced his election not to enforce it by entering into the negotiations. Justice Blackburn says: 'Most of the cases in which the doctrine of election has been discussed have been cases of landlord and tenant under a regular lease, in which has been reserved a right of reëntry for a forfeiture; that is, an option to determine the lease for a forfeiture; but this doctrine is not, as Mr. Russell seems to think, confined to such cases. So far from that being so, the doctrine is but a branch of the general law, that, where a man has an election or option to enter into an estate vested in another, or to deprive another of some existing right, before he acts he must elect, once for all, whether he will do the act or not. He is allowed time to make up his mind; but when once he has determined that he will not consider the estate or lease, whichever it may be, void, he has not any further option to change his mind.' And then the learned judge cites authorities, going back to the Year Books, to show that a determination of a man's election in such cases may be made by express words, or by act; and that if, by word or by act, he determines that the lease shall continue in existence, and communicates that determination to the other party, he has elected that the other shall go on as tenant. These cases show the readiness with which courts seize hold of any cir-

cumstances that indicate an election or intent to waive a forfeiture. We think that the present case is within the reason of these authorities; and that the objection, that the note was already past due when the agreement to extend it was made, is not sufficient to prevent said agreement from operating as a waiver of the forfeiture."

In the opinion of the court in *Queen Ins. Co.* v. *Young,* 86 Ala. 424, 5 South. 116, 11 Am. St. 51, we find the following language: "Conditions in a policy of insurance, limiting or avoiding liability, are strictly construed against the insurer, and liberally in favor of the assured. Though a waiver may be in the nature of an estoppel, and maintained on similar principles, they are not convertible terms. The courts, not favoring forfeitures, are usually inclined to take hold of any circumstances which indicate an election to waive a forfeiture. A waiver may be created by acts, conduct, or declarations, insufficient to create a technical estoppel. If the company, after knowledge of the breach, enters into negotiations or transactions with the assured, which recognize and treat the policy as still in force, or induce the assured to incur trouble or expense, it will be regarded as having waived the right to claim the forfeiture."

In *Kiernan* v. *Dutchess, etc., Co.,* 150 N. Y. 190, 44 N. E. 698, it was said by the New York court of appeals: "There may be a waiver by express agreement or through estoppel, but neither is required to effect that result, as words or acts from which an intention to waive may reasonably be inferred are sufficient, at least when acted upon. *Titus* v. *Glenns Falls Ins. Co.,* 81 N. Y. 410, 419; *Roby* v. *American Central Ins. Co.,* 120 N. Y. 510; *Armstrong* v. *Agricultural Ins. Co.,* 130 N. Y. 560. The distinction between waiver and estoppel, as applied to the law of insurance, is not in all respects clearly defined. An express waiver is in the nature of a new contract, modifying to some extent the old one;

It does not require a new consideration unless it is by inducing a change of position, for the law of waiver seems to be a 'technical doctrine, introduced and applied by courts for the purpose of defeating forfeitures.' *People* v. *Manhattan Co.,* 9 Wend. 351, 381; *Insurance Co.* v. *Norton,* 96 U. S. 234. An estoppel forbids the assertion of the truth by one who has knowingly induced another to believe what is untrue and to act accordingly. While express waiver rests upon intention, and estoppel upon misleading conduct, implied waiver may rest upon either, for it exists when there is an intention to waive unexpressed, but clearly to be inferred from circumstances, or when there is no such intention in fact, but the conduct of the insurer has misled the insured into acting on a reasonable belief that the company has waived some provision of the policy."

Cases in this State, as well as elsewhere, justify the conclusion that there are some acts that the courts will treat as a waiver *per se.* In the carefully considered case of *Aetna Ins. Co.* v. *Shryer,* 85 Ind. 362, 368, where insufficient proofs had been furnished within the time, it was said: "The doctrine that an insurance company, by putting its refusal to pay the loss upon a definite ground different from a want of preliminary proofs, ·or of defect in their form or substance, waives the right to insist upon the failure to make such proof as a defense to an action on the policy, is in harmony with the elementary principle that a party, who places his refusal upon one ground, can not, after action brought, change it to another and different one. *Hanna* v. *Phelps,* 7 Ind. 21; *Turner* v. *Parry,* 27 Ind. 163; *Bartlett* v. *Adams,* 43 Ind. 447; *Blair* v. *Hamilton,* 48 Ind. 32; *Embden* v. *Augusta,* 12 Mass. 307; *Gerrish* v. *Norris,* 9 Cush. 167. There is no reason why this rule should not apply to policies of insurance as well as other contracts."

In a subsequent case it was said by this court: "Besides, since it appears by the complaint that an adjustment had

been made by an agent duly empowered for that purpose, and that the company had afterwards notified the plaintiff that the loss would not be paid, it must be deemed that further notice and proof have been waived. After an insurance company has itself taken cognizance of a loss, and prepared such proofs as it deems essential to an adjustment, the insured may assume, until notified to the contrary, that additional notice and proofs are not required." *American Cont. Ins. Co.* v. *Sweetser,* 116 Ind. 370. In a still later case this court said: "The complaint alleged that the appellant had been notified by the appellee of the loss, and the appellant took possession of the policy and refused to adjust or pay the loss, and notified appellee that it would not adjust or pay the same; under this state of facts the appellee had the right to believe that proof of loss was unnecessary, and would be of no avail and it was a waiver upon the part of the appellant, and it is estopped from setting up such breach of the policy." *Norwich, etc., Ins. Co.* v. *Girton,* 124 Ind. 217.

In a number of cases the Appellate Court of this State has held that a denial of liability before the insured is in default in furnishing the proofs is a waiver. *Continental Ins. Co.* v. *Chew,* 11 Ind. App. 330, 54 Am. St. 506; *Aetna Ins. Co.* v. *Strout,* 16 Ind. App. 160; *National, etc., Ins. Co.* v. *Whitacre,* 15 Ind. App. 506; *Western Assur. Co.* v. *McCarty,* 18 Ind. App. 449; *Home Ins. Co.* v. *Boyd,* 19 Ind. App. 173; *Home Ins. Co.* v. *Sylvester,* 25 Ind. App. 207. As said in *National, etc., Ins. Co.* v. *Whitacre, supra:* "They proceeded to 'investigate' the loss, and denied their liability upon other grounds. There was, therefore, a waiver of the requirement for strict proof."

It would be difficult to formulate in advance rules by which it could in every instance be determined whether the conduct of the insurer amounts to a waiver *per se,* or is only evidence of a waiver that should be submitted to a jury to ascertain whether it will draw the inference of an

intent to waive. In cases that rest on an election made after the policy ceases to be operative, if the act of election is unequivocal, the only question to be determined by the jury is the existence of the facts by which it is manifested. In cases that rest not on the intent of the insurer but upon conduct during the time that proofs of loss may be made, we think that as applied to acts that by necessary implication give the assured to understand that proofs of loss need not be furnished, it may be affirmed, without more, that such acts are a waiver, *per se,* of the right to such proofs.

If, before the time for furnishing proofs of loss has expired, an insurance company denies liability upon the policy, the assured can only infer that it would be a useless act to submit proofs of loss, and therefore the company will not be permitted afterwards to object that such proofs were not furnished. If, during such time, the company puts its refusal to settle on other grounds, and not on the ground that proofs of loss have not been furnished, it ought not, as pointed out in *Aetna Ins. Co.* v. *Shryer, supra,* to be permitted to shift its ground in court to the extent of insisting upon a condition in its policy in the nature of a forfeiture that it is too late to comply with. We see no reason why such cases should not be put on the ground of election. The company, instead of awaiting proofs as a basis for investigation, voluntarily assumes a position that, if maintained, would render it useless to furnish proofs; and, as the condition is in the nature of a forfeiture, that the courts are disposed to relieve from if there is any basis for so doing, it seems but reasonable to prevent the company from taking an inconsistent position with reference to the clause thereafter. But, whatever is the philosophy of the rule, we think, in view of the authorities we have cited, that such conduct, during the time that the proofs might have been made, is a waiver *per se.* In the Shryer case, to which we have referred, it was said on page 367: "Another reason for holding that the appellant waived the preliminary proof

of loss is that payment was withheld upon other and different grounds. The objections were, as we have seen, not that proof had not been made, but that there were other grounds which vitiated the insurance. The writer from whom we have quoted says: 'Thus, where the insurers refuse to pay on special grounds, as that the contract was never completed, or that the insured had no interest, or on any other grounds having no reference to the sufficiency or insufficiency of the preliminary proof, it is a waiver of their right to object to any deficiency in this particular.' At another place this author says: 'So if the insurers decline to pay without giving any reason upon which to rest their refusal, such a refusal, by necessary implication, gives the assured to understand that the production of preliminary proof will be useless,—an idle ceremony, which the law will not require him to perform. So, if the refusal to pay is upon the ground that the property lost was not included in the risk, or that the assured has forfeited his right to recover by fraud.' May, Insurance, §§468, 469. Many cases are cited in support of the text, to which may be added, *Little* v. *Phoenix Ins. Co.,* 123 Mass. 380; *Graves* v. *Washington, etc., Ins. Co.,* 12 Allen 391; *Pennsylvania, etc., Ins. Co.* v. *Kittle,* 39 Mich. 51; *Farmers, etc., Ins. Co.* v. *Taylor,* 73 Pa. St. 342; *Farmers, etc., Ins. Co.* v. *Meckes,* 12 Reporter, 314; *Farmers, etc., Ins. Co.* v. *Moyer,* 97 Pa. St. 441."

Under the facts pleaded in the second paragraph of complaint relative to the negotiations continuing until after the time for furnishing proofs of loss had expired, it may be that it can not be affirmed that there was an election, because it is not alleged that the adjuster had knowledge that the proofs of loss had not been furnished, and it is also to be noted that it is not alleged that appellee's agent was an agent for the purpose of settling the loss, or that she affirmed his acts. We are inclined to think that, if the paragraph is sufficient, it must be because of the allegations

that are subsequent to those pointed out. The great trouble about the pleading is that, after alleging the negotiations between the adjuster and the plaintiff's agent, the paragraph proceeds to allege, without laying any time, that the "plaintiff" and "defendant" were unable to agree as to the amount of the loss; that the loss has never been adjusted or settled; that the "defendant" refused to pay the same; that it did not base its refusal on the failure to furnish proofs of loss, but on other grounds altogether. We have concluded that the paragraph is sufficient. If, during the sixty days after the fire, there was a refusal to pay on other grounds, and not on the ground that proofs of loss had not been furnished, we think, as we have said, that there was a waiver per se; while, if such portion of said paragraph be construed as referring to a time after a forfeiture had been incurred, then we regard such refusal upon other grounds, coupled with silence as to the fact that proofs had not been furnished, when taken in connection with the protracted negotiations, as conduct tending to evince the election of the company not to enforce the forfeiture; thus making it proper, as the acts, so far as they can be said to be an evidence of mere intent, were equivocal in their character, to submit the question as a mixed one of law and fact, as to whether there was an intent to waive the particular ground of defense. As to what was the particular theory of the complaint we will discuss hereafter. We regard the third paragraph of complaint as more clearly sufficient than the second.

It is contended by appellant's counsel that these paragraphs should be held bad on the ground that the averment that the parties were unable to agree upon the amount of loss or damage controls the averments that defendant made no objection to plaintiff's claim on account of her failure to furnish proofs of loss, but based its refusal to pay the claim on other grounds. We do not think so. A refusal to pay because the claim of loss is excessive may be a

waiver of the furnishing of proofs of loss, as much as where the refusal is put on any other ground. If the assured regards his damage as amounting to a certain sum, and will not take less, while the company refuses to give that sum, it but remains to submit the contention to the courts. The requirement of the contract that proofs of loss be furnished is to enable the company, without suit, to comply with its contract to indemnify the assured against damage, not exceeding the amount of the insurance; but if it gives notice that it will not make the adjustment the assured claims it should, then it is an idle act to furnish it with proofs of loss that it is known that it will not make use of. for the purpose of adjustment.

We quote the following from the language of the court in *Aetna Ins. Co.* v. *Simmons,* 49 Neb. 811, 69 N. W. 125: "The evidence tends to show that the fire occurred on the 8th day of November, 1892; that the insured at once gave notice of this to the insurance company, and that within a few days thereafter the adjuster of the company came to the farm of the assured, examined and inquired into the loss, the cause of the fire, etc.; that the assured stated to the adjuster the particulars of the fire, submitted to him a written memorandum of the items of property destroyed, and their value. Some conversations and negotiations took place between the adjuster and the assured, which resulted in the adjuster finally offering the assured $900 in full settlement of the loss. This offer was declined by the assured, whereupon the adjuster departed. We think the conduct of the adjuster justified the conclusion of the jury that the insurance company had refused to pay the loss."

The evidence clearly supports the verdict. The policy was upon a brick building known as No. 308 Upper Water street, in the city of Evansville. About the middle of September, 1899, while said policy was in force, an attached building, known as No. 310 Upper Water street, was destroyed by fire. Said fire caused a slight damage to the ceil-

ings, wall-paper, and floors of said former building, and later, in December, 1899, the intervening wall of said buildings, that belonged, however, wholly to appellee, and stood entirely upon said insured premises, fell, carrying with it a part of the roof of her building. The company acted upon an oral notice of the fire, and about a week after its occurrence sent an adjuster to adjust the loss. He met with the appellee's rental agent, and they went upon the premises, and had some negotiation about the loss. This agent testified upon the trial that he had no authority to act for appellee except in the collection of rents. There appears to have been little of difference between the adjuster and the said rental agent over the items that were discussed, which did not include the wall. The matter was not closed up that day. A few days later the company sent proofs of loss to its local agent. Appellee's said agent refused to execute the papers because he had not had the wall examined. About this time the board of public works served notice on said agent that the wall was unsafe and must be torn down. The adjuster returned to the city about the middle of the next month, and he and the appellee's son, who was authorized to represent her, went before the board and attempted to have the enforcement of the order delayed. It is not disputed that the adjuster stoutly contended that the wall was safe, and advised appellee's son to let the city tear down the wall at its peril. The son testified that the adjuster then proposed "to let the matter rest for a while." There appears to have been no further conversation about the proofs of loss after the matter of the wall being unsafe came up. The adjuster testified that he told appellee's son, on the occasion of said adjuster's second visit, that the loss had been adjusted on the basis of $16; that he was not willing to pay any more; that he considered the loss settled; and he admitted that he did not say anything about the omission to furnish proofs of loss.

It is claimed that there was error in the giving of the first instruction, because it did not advise the jury that it was necessary for appellee to prove that she was the owner of the property at the time of the fire. There was no dispute upon this subject. It appears that the appellee had had the possession of the property from the time the policy issued until after the time of the fire; witnesses referred to it as her property, and a warranty deed to appellee, dated May 19, 1890, covering, as we may presume, the property in question, although we can not identify it as the property known as No. 308 Upper Water street, was put in evidence without objection. We refuse to reverse on this ground.

There is no more of merit in the objection that the court did not instruct the jury that under the first paragraph of the complaint the appellee must show that proofs of loss were made within sixty days after the fire. The instruction did not purport to relate to any particular paragraph. It undertook, in general terms, to state to the jury what appellee must prove in order to recover; and when the element of proofs of loss was reached the court instructed the jury that the appellee must prove that appellant had waived such provision of the policy. Subsequent instructions dealt fully with the subject of waiver.

Instruction number three is, in the abstract, a correct statement of the law of waiver, and it is in accord with the evidence, but it is objectionable because it instructed the jury as to the consequence if the jury should find, in connection with other matters of hypothesis, that the appellant admitted its liability during the course of the negotiations. We think that the court instructed without the issues in the particular mentioned. This would ordinarily lead to a reversal, but as an examination of the evidence, both of appellant and appellee, makes it plain that the jury could not have reached any other just conclusion upon the subject of waiver than the conclusion that it did reach, we deem it our

duty to follow the mandate of the statute, which provides that the judgment shall not be reversed "where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below." §670 Burns 1901; *Stockwell* v. *Brant,* 97 Ind. 474; *State, ex rel.,* v. *Ruhlman,* 111 Ind. 17; *Woods* v. *Board, etc.,* 128 Ind. 289; *Mode* v. *Beasley,* 143 Ind. 306; *Stanley* v. *Dunn,* 143 Ind. 495. The other instructions complained of relate to the subject of waiver. With the exception of the fifth, they contain correct instructions as to the law. The fifth is indefinite as to the time of the refusal to pay on other grounds. If it was after the time for furnishing proofs had expired, we think that it would only be evidence tending to show an election, and not a waiver *per se,* as the court charged; but, as the appellant's own evidence showed what amounted to a refusal to settle within the time that the proofs might have been furnished, the instruction, especially when taken in connection with the instructions generally, could not have misled the jury.

It is a matter of grave difficulty to determine the theory of the second and third paragraphs of complaint as to when the waiver occurred, although, as we have shown, a cause of action was stated in either event. But, having examined the appellee's evidence, as well as that of appellant, and finding that the evidence as to waiver was directed to the question as to a waiver by conduct during the sixty days, and that the appellant's own evidence made out a waiver within that time, we feel justified in holding that the theory upon which the case was tried was that there was a refusal to pay before the time for furnishing proofs of loss had expired, and to that theory the parties will therefore be held on appeal.

We find no prejudicial error. The judgment is affirmed.

## ON PETITION FOR REHEARING.

PER CURIAM.—Appellant has filed a petition for a rehearing in this case. In the brief of counsel in support of the motion there seems to be no serious contention that the result was wrong, but exception is taken to the following sentence in the opinion: "If the assured regards his damage as amounting to a certain sum, and will not take less, while the company refuses to give that sum, it but remains to submit the contention to the courts." The opinion had to do with a case where it *prima facie* appeared that the company had thrown the assured off her guard until it was too late to comply with the condition. The court did not have before it a case of a mere division of opinion between the parties that resulted in a refusal of the company to pay the amount demanded, where there was afterwards, and within the sixty days, negotiation that put the affair so far upon its original footing that the courts would hold that the filing of proofs of loss afterward could be justly required, as an act that it could be said that the company, in view of the contract and its subsequent conduct, had a right to expect.

As to the element of the right to demand an arbitration of the damages, it is sufficient to say that no such demand was made by the appellant.

The petition for a rehearing is overruled.