# The Aurora Fire & Marine Insurance Company v. Elizabeth Kranich.

*Insurance: Proofs of loss: Time: Waiver.* It is competent for an insurance company to waive strict compliance with the terms of their policies as to furnishing proofs of loss; and where it does waive such proofs, either expressly or by a course of conduct calculated to throw the insured off his guard, as by a distinct refusal to pay the loss, based upon some other defense, so that proofs are not furnished within the time fixed in the policy, it cannot afterwards take advantage of the delay and set it up as a defense to an action upon the policy.

*Proofs of loss: Policy: Default: Forfeiture: Construction.* The query is suggested, whether where the policy required proofs of loss to be furnished within a specified time but did not declare the effect of a failure to furnish the same as required, while for a violation of other provisions of the policy it is expressly provided that the company shall be absolved from all liability, the failure to furnish proofs within the time fixed would in any case deprive the insured of all rights.

*Insurance: Policy: Vacancy of premises: Construction.* The provision in a policy that "if at any time during the continuance of this policy * * * the insured property * * * shall become vacant or unoccupied" the insurer shall be absolved from all liability, is held to have no application to the case of buildings that are vacant at the time the policy is issued, the insurer having notice of the fact.

*Insurance: Vacancy of premises: Construction.* Under a policy containing such a provision, if the property is unoccupied when the risk is taken, with the knowledge of the insurer, but is afterwards occupied for a time, the insurer is liable, though the property at the time of the loss had again become vacant and unoccupied, in the absence of any provision in the policy requiring the insured to have and keep the property occupied. The risk is in no way increased from what it was when the policy issued; and the policy failing to make provision for such a state of facts, the law will not step in and relieve the insurer from responsibility.

*Insurance: Renewals.* Renewals, though amounting to a new contract, in no way change the terms and conditions of the original policy except as they continue it in force, but the rights of the parties are governed by the provisions of the policy as originally issued, except as the same are affected by any waiver that may have arisen in the meantime.

*Waiver: Insurance: Policy: Renewals.* While a knowledge of facts brought home to the company at the time the policy is extended by renewal, may operate as a waiver of some of the provisions of the policy, it cannot operate to incorporate new provisions into the contract.

*Insurance: Vacancy of premises: Notice: Waiver: Renewals.* If the agent who issued the policy, or who renewed the same, had knowledge that the property was at the time unoccupied, the company cannot defend under a clause providing that if at any time during the continuance of the policy the property should become vacant or unoccupied the com-

36 MICH.—37.

pany should be absolved from all liability; the issue or renewal of the policy with such knowledge would be a waiver of this provision.

*Heard April 6.     Decided April 18.*

## Error to Superior Court of Detroit.

*Otto Kirchner*, for plaintiff in error, cited: *Campbell v. Charter Oak Ins. Co.*, 10 *Allen*, 213; *N. Y. Central Ins. Co. v. Watson*, 23 *Mich.*, 486; *Security Ins. Co. v. Fay*, 22 *Mich.*, 467.   He argued that the failure to furnish proofs of loss within the time prescribed, and the violation of the provision as to the property becoming vacant or unoccupied, were complete defenses unless there had been a waiver by conduct which had misled plaintiff to her prejudice.

1. There was no evidence of waiver of the condition as to occupation of the insured premises.  It is immaterial whether the agent knew the premises were vacant at the time of issuing the original policy.   During the time *that* contract was in force, no loss occurred, and no claim is made under it. Each renewal was a separate contract, and the rights of the parties must be viewed with reference to the facts as they existed at the times these were effected.   Ryman was the last occupant, and the company's agent had notice of his occupancy and was never informed of his removal; and yet the court left it to the jury to say whether the agent knew the premises were unoccupied when the last contract for insurance was made.   There was no evidence to support such a charge, but, on the contrary, all the evidence tended in the opposite direction.

2. There was no waiver of proofs of loss.   The mere expression by the agent to the insured of his opinion that " the company was not allowed to give (her) any thing because the policy said (she) should notify the company if there was any body in the house, and that they did not owe (her) a cent," was not a *refusal* to pay upon the *sole* ground that the premises were not occupied as required by the policy, because no demand for payment was made and no money was then due. There was no evidence of any refusal on the part of the company to pay, *based upon the ground* that the premises were not occupied, until sixty days after the proofs had been sent, and long after the time limited for making them had expired. And the insured premises were described in the policy as " *occupied by a tenant*."

*Moore, Canfield & Warner* and *Hoyt Post*, for defendant in error, as to proofs of loss, called attention to the fact that the policy requires the assured to " forthwith give notice " and " in thirty days deliver" the prescribed proofs of loss, and does not in terms require the proofs to be furnished in thirty days *from the date of the loss;* and proofs were furnished within thirty days from notice, and the notice was within a reasonable time. And the policy nowhere provides that failure to furnish the proofs within the required time shall defeat the policy, while failure to perform other conditions specified are expressly made to absolve the company from all liability. This provision should be literally construed.

But if the provision is binding and imperative and open to the construction claimed for it by. the company, it was waived by the action of the company's agents, by their action in basing their claim that the company was not liable on the policy, upon the sole ground of the vacancy of the premises. Such provisions may be waived, even after forfeiture: *29 Mich., 241; 57 Barb., 518; 5 Lans., 275; 25 Mich., 56; 4 How. (Miss.), 567; 20 Ill., 557; 2 N. H., 341; 4 Bing. N. C., 229; Chitty on Bills, 501.*

The want of occupancy of the premises under the facts did not operate as a forfeiture of the policy. There was sufficient evidence to show a waiver by the company of this condition. The company's agent knew at the time of issuing the policy that there was nobody living in the house; and the company was bound by the acts of its agent; and his knowledge respecting the occupancy of the premises was the knowledge of the company: *12 Mich., 203, and cases cited; 21 Mich., 246; 22 Mich., 159; 30 Mich., 41; 33 Mich., 143, and cases cited.* And a waiver under the original policy extends to all subsequent renewals thereof: *People's Ins. Co. v. Spencer, 53 Penn. St., 353;* but the agent, moreover, had like notice at the time of issuing the subsequent renewals. The question of waiver was one of intent, and was properly submitted to the jury under the evidence, and their finding is therefore conclusive.

MARSTON, J :

Defendant in error brought her action to recover a loss under a policy of insurance issued and delivered by plaintiff in error, April 12, 1872, and renewed annually thereafter, the last renewal being April 12, 1875. which continued the policy in force one year from that date. The two principal

facts relied upon as a defense were, *first*, a failure to furnish proofs of loss according to the terms of the policy, and *second*, that at the time of the loss, August 12, 1875, the buildings insured were vacant and unoccupied. The provisions of the policy applicable to these defenses were as follows:

"Such loss to be payable at their [the defendant's] office in Cincinnati, Ohio, in sixty days after the proofs thereof satisfactory to this company [defendant], made and provided by the assured in accordance with the requirements of this policy, are received at said office of the company."

"The assured shall forthwith give notice to the [defendant] company of any loss, and in thirty days deliver at the office of the company in Cincinnati, Ohio, either personally or by agent, mail or express, a *detailed inventory and particular account* in writing of such loss, signed and sworn to by him, stating what particular property has been lost or damaged, and what the loss or damage consists in, and whether any and what other insurance has been made on the property, and building containing the property insured; about the cash value at the time of the loss of the subject insured; the interest of the assured; in what general manner (as to trade, manufacture or otherwise) the building insured or containing the property insured, and several parts thereof, were occupied at the time of the loss; and who were the occupants of such building; and copies of the written portions of all policies thereon."

"If at any time during the continuance of this policy, * * * the insured property, or buildings containing the same or any portion thereof, shall become vacant or unoccupied; * * * this company shall be absolved from all liability under this policy."

The charge of the court (*b*) in reference to waiver of

(*b*) "The proof of loss required by the terms of this policy is to be furnished within a certain time. This time having been fixed, and the parties agreeing to it, they were bound by it, and if the party fails to abide by the terms of his agreement, then he forfeits his right under the contract. He must be bound by the terms of the contract, as he made it. But notwithstanding this obligation on the part of a party to furnish the proofs within

proofs of loss by the company was, as to the facts referred to therein, fully sustained by the evidence introduced on the trial. The law is well settled, we think, that the company may waive strict compliance with the policy in this respect, and that where the company does, either in express terms waive proofs of loss, or by a course of conduct calculated to throw the insured off her guard, as by a distinct refusal to pay the loss, based upon some other defense, so that proofs are not furnished within the time fixed in the policy, the company cannot afterwards come in, and take advantage of the delay as a defense to the action.—*The Hibernia Insurance Co. v. O'Connor, 29 Mich., 241.*

It is also worthy of notice that the policy does not declare the effect of a failure to furnish proofs of loss within the time mentioned, while for a violation of its provisions in other respects it expressly provides that the company shall be absolved from all liability under the policy. It would be at least a question of some doubt, whether a failure to furnish proofs within the time fixed, would deprive the insured of all rights, even if there had been no waiver in this case. As, however, the jury, from the evidence submitted, and under proper instructions, found a waiver on the part of the company, it is perhaps unnecessary to decide what the effect of a failure would have been in case there had been no waiver.

The evidence seems to have been clear, and in effect un-

_____

the proper time, and the right of the company to insist upon it in case of insurance, there may be a waiver. This is a right adopted for the benefit of the insurance company, and if the company chooses to waive it, it can do so."

The court further instructed the jury: "Mere silence is not to be taken as a waiver of the right of the insurance company to insist upon a strict compliance with the contract. But where there are other acts done, as acts have been done here, either by the company or its agents, you may take these acts into consideration, in order to discover whether there has been any waiver. In this case two acts are mainly relied upon by counsel for the plaintiff. Those two acts are what was said by Mr. Duvernois, as the agent of the company, and the act of the company in the letters written to the attorneys, when communicating with the home office as to this matter. The act with which Mr. Duver-

disputed, that at the time the policy was first issued in April, 1872, the buildings were unoccupied, and that the agent who issued the policy was informed of this fact. Such being the case, had they remained unoccupied even up to the time of the loss, there can be little or no doubt but that the insured would have been entitled to recover. The company could not insure vacant buildings, take and retain the premium, and in case of loss relieve itself from responsibility, under a claim that it was not liable unless they were occupied, unless some provision was inserted in the policy, by which the insured agreed they should not be permitted to remain vacant. Besides, the provision inserted in this policy as to vacant buildings has no application to buildings that are vacant at the time the policy is issued, to the knowledge of the company. The provision is, that "if at any time during the continuance of this policy * * * the insured property, etc., * * * *shall become vacant* or unoccupied." Clearly this refers and applies to property occupied at the time the policy is issued and afterwards becoming vacant. If, however, the property is unoccupied when the risk is taken, and there is no provision in the policy requiring the insured to make any change in this respect, we are of opinion the company would be liable under the policy for a loss occurring at a time when the property was vacant, even although it might appear that intermediate the date of issue of the policy and date of loss the

---

nois is most immediately connected is simply a statement on his part, when informed of the loss here, that the company would not pay, because the premises were not occupied. In other words, as they claim, the statement was substantially this: 'You have not carried out the terms of the contract providing for the occupancy of the premises, and we shall rely upon that as our defense.' If that was the effect of it, and if that was intended to be the effect of the statement, then you may consider that as a waiver, or take the fact into consideration as a waiver of the right to insist upon proof at the proper time. On the other hand, if such is not, in your view, the fair inference to be derived from the statement,—I say, if the facts as they actually occurred do not lead to that inference,—then there was no waiver of this right, and they had a right to insist upon the terms of the policy being carried out as to the proofs."

property had been actually occupied. Under such circumstances the risk is in no way increased or changed. The property is in no worse situation at the time of the loss than it was when the policy was issued. The policy, although framed to carefully guard the rights of the company, makes no provision for such a state of facts, and the law will not step in and relieve the company from responsibility, where the provisions of the policy have not been violated by the insured, and where the state of the property has at all times during the continuance of the policy been in as favorable a condition as it was when the policy was issued.—*May on Ins.*, § *191*.

The renewals, although amounting to a new contract, in no way changed the terms and conditions of the policy, except as they continued it in force. The rights of both parties, no matter how often a policy of insurance may have been renewed, are still bound by the provisions of the policy as originally issued. Its terms are neither enlarged, restricted or changed. True, there may be such a knowledge of facts brought home to the parties at the time the policy is extended by renewal as would amount to a waiver of some of its provisions, but the same result would in most if not in all cases follow where the facts were brought to the knowledge of the parties at any other time. While such information can be used to show a waiver, it is not admissible for the purpose of incorporating provisions into the contract not previously contained therein.

In this case there was evidence tending to show that the agent of the company had at several times been informed that different tenants had been occupying the premises, and that for portions of the time they were vacant. The court refused to instruct the jury that "there is no evidence in the case, that at the time of the last insurance the company had knowledge of the fact that the premises were vacant." The instructions given upon this branch of the

case (c) were, we think, quite as favorable, if not more favorable than the plaintiffs in error were entitled to. The other errors assigned are immaterial.

The judgment must be affirmed, with costs.

The other Justices concurred.

(c) The court charged the jury on the question of occupation: "Although the policy in this case specifies that the premises were occupied by a tenant, still if the agent of the company knew that, as a matter of fact, when the policy was originally issued, the premises were not occupied by a tenant, then the plaintiff is entitled to recover. That applies to the policy as originally issued.

"It appears that there were certain renewals here, running through three or four years. Now, if at the time of these renewals the buildings were represented as being occupied, and subsequently they became vacant, and neither the agent nor the insurance company had any knowledge of such vacancy, then the insurance policy would become void, because by one of the very terms of this insurance policy, which we have read to you, we discover their intention is to insure occupied property. Now, in this case, if when the policy was originally taken out, or at any subsequent time, when the policy of insurance was renewed or continued, there was a representation made that these premises were occupied, and subsequently they became unoccupied and were destroyed while they were so unoccupied, and neither the agent nor the company had any knowledge of this, though the policy can be operative, then the plaintiff, so far as this point has any bearing, would not be entitled to recover.

"You will take all the testimony into consideration, and see whether there was a representation that these premises were occupied at that time, and if there was a representation that they were so occupied, and the premises were afterwards destroyed while they were vacant, the plaintiff is not entitled to recover."

And the defendant excepted to that part of the charge which left it for the jury to say whether the agents had any knowledge of the vacancy of the property at the time of the renewals.

And the court further charged the jury: "Still further, if you shall come to the conclusion that the agent knew that the premises were unoccupied at the time of issuing the policy, or at the time of any of these renewals, and that notwithstanding he issued the renewals, then the second question will be whether there was a waiver of the proof of loss."